IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **YELITZA CASTILLO; ET AL.,** *Plaintiffs,* V. **GUARDIAN INSURANCE COMPANY, INC., ET AL.,** *Defendants.* | **Civil No**. 20-1262 (DRD) 20-MC-317 (DRD) **Consolidated Cases** |
| IN THE MATTER OF: **JAMES UGOBONO DÍAZ AND FRANCISCO RIVERA MORALES,** FOR EXONERATION FROM OR LIMITATION OF LIABILITY AS OWNER OF THE VESSEL MARINA & PAQUITO HULL NO. BWCE93C919, *Petitioners.* | |

**OPINION AND ORDER**

Pending before the Court is plaintiffs, Yelitza Castillo, Leslie Sánchez and Sylvia Negrón's *Motion for Partial Summary Judgment and Memorandum of Law* (Docket No. 103)[1]. The defendants filed an *Opposition to Plaintiffs' Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof* (Docket No. 105)[2].

For the reasons stated herein, claimant-plaintiffs, Yelitza Castillo, Leslie Sánchez and Sylvia Negrón's *Motion for Partial Summary Judgment and Memorandum of Law* (Docket No. 103) is hereby **DENIED.**

---

[1] A *Statement of Uncontested Material Facts* was filed in support thereof. *See* Docket No. 104.
[2] An *Opposition to Plaintiffs' Statement of Material Facts* was also filed. *See* Docket No. 105, Exhibit No. 1.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying petition filed by defendants, James Ugobono-Díaz and Francisco Rivera-Morales, seeks to limit their potential liability as owners of the vessel "Marina & Paquito" also known as M/V Backstage, Official Hull No. BWCE2393C919[3]. The defendants' exposure to liability stems from a collision of M/V Marina & Paquito on the evening of March 14th, 2020. On said date, Rivera invited several friends and acquaintances on board the vessel with the consent of the owner of the vessel, Ugobono. *See Complaint for Exoneration from or Limitation of Liability*, Rel. Misc. No. 20-317 (DRD), Docket No. 1 at ¶ 10. Among those onboard were plaintiffs, Leslie Sánchez, Yelitza Castillo, and Sylvia Negrón. *See id.* They all boarded the vessel in Fajardo, Puerto Rico, in order to navigate the waters adjacent to Marina Puerto del Rey. *See id.* at ¶ 11. At around 8:45 p.m. as the vessel was about to enter Marina Puerto del Rey, the vessel impacted the reef located on the starboard side of the entrance of the Marina Puerto del Rey and ran aground. *See id.* at ¶ 12.

Since the collision, two (2) torts cases have been filed in this Court to recover damages suffered as a result thereof. On September 11, 2020, the defendants-petitioners filed a *Complaint for Exoneration from or Limitation of Liability* (consolidated case no. 20-mc-317 (DRD)).[4] The United States' *Limitation of Shipowner's Liability Act*, 46 U.S.C. §§ 30501-30512, and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Supplemental Rule F, provide for ship owners to seek this type of liability limitation for

---

[3] The Court notes that the Certificate of Numeration issued by the Puerto Rico Department of Natural and Environmental Resources states that the name of vessel for Hull BWCE2393C919 is "Marina & Paquito".
[4] *See* Docket No. 1. All claims were consolidated into 20-cv-1262 (DRD).

potential fault or negligence stemming from an accident similar to that with the M/V Marina & Paquito.

On July 18, 2022, plaintiffs filed a *Motion for Partial Summary Judgment and Memorandum of Law* (Docket No. 103).[5] Defendants filed an *Opposition* shortly thereafter. *See* Docket No. 105.

In synthesis, plaintiffs seek the dismissal of the defendants' *Complaint for Exoneration from or Limitation of Liability* as M/V Marina & Paquito was not manned in accordance with law and regulation. Specifically, claimants-plaintiffs aver that at the time of the incident, the M/V Marina & Paquito was operated "by an incompetent, unexperienced and/or inadequately trained captain such as codefendant-petitioner Rivera, over the speed limit, at night, and intoxicated and/or under the influence of alcohol and/or tired, rendered the vessel unseaworthy. The owners of the vessel knew, or should have known, of the unseaworthy condition of the vessel and therefore limitation of liability is barred." Docket No. 103 at p. 6. For instance, plaintiffs claim that the vessel had an "inoperative and/or faulty navigational equipment on board," as the GPS system was not updated. *Id.* at p. 13. But, in any event, "the [insurance] policy doesn't indicate that Guardian [Insurance Company] is entitled to limit its liability when the insureds have been afforded a limitation to their liability pursuant to the Shipowner's Limitation of Liability Act." *Id.* As Guardian does not have a proprietary interest in the M/V Marina & Paquito, it is not entitled to limit its liability. *See id.*

In *Opposition*, defendants-petitioners argue that not only Rivera had more than 20 years of navigation experience, but he has had a boat since 1997 and "is an avid and frequent

---

[5] A *Statement of Uncontested Material Facts* was also filed. *See* Docket No. 104.

seaman." Docket No. 105 at p. 2. Likewise, "the evidence shows that Mr. Rivera was not intoxicated in any way while navigating the Vessel nor was he speeding. Therefore, the Owners are entitled to the defense set forth in the Limitation Liability Act." *Id.* Alternatively, "Mr. Rivera's competence as a captain, purported intoxication and/or speed while navigating the Vessel is a trial worthy issue that must be decided by the tier of fact during Plaintiffs' day in Court," as there are disputes as to the circumstances of the accident. *Id.*

As to Guardian Insurance Company (hereinafter, "Guardian"), the Owners' insurance carrier, defendants-petitioners argue that the Policy expressly states that Guardian can assert said defense. *See id.* at p. 3. Therefore, Guardian should not be ordered to indemnify plaintiffs-claimants in an amount surpassing the amount that the Owners may be ordered to pay should they be held liable. *See id.*

## II.   FACTUAL FINDINGS[6]

The following factual findings are taken from the parties' statements of undisputed facts, and supported documentation. Upon careful review of the record, the Court finds the following facts are undisputed:

1. Plaintiffs, Yelitza Castillo, Leslie Sánchez, and Sylvia Negrón are all of legal age, citizens of the United States of America and permanent residents of Puerto Rico. *See* Docket No. 1 at ¶¶ 6-7.

2. At the time of the occurrence of the accident, codefendants, Francisco Rivera and James Ugobono were the owners of "M/V Backstage[7]," a motor vessel 2019 Boston Whaler M/V,

---

[6] Some of the *Factual Findings* are not required for the Court to rule on the pending motions. However, in order to simplify the outstanding controversies, the Court includes herein other *Factual Findings* that it found to be undisputed and will be relevant during trial.

hull no. BWCE2393C919. Rivera believes that it was a Boston Whaler, 33 feet, center console. It had two outward motors 300 horse power each, and Mercury was the brand. *See Deposition of Francisco Rivera*, Docket No. 105-3 at p. 9.

3. Ugobono and Rivera bought M/V Marina & Paquito for $269,000.00. *See id.* at p. 9.

4. Ugobono and Rivera were the third owners of M/V Marina & Paquito. *See id.*

5. M/V Marina & Paquito's homeport was Marina Puerto del Rey in Fajardo, Puerto Rico. *See id.* at p. 10.

6. Before March 14, 2020, Rivera had not read M/V Marina & Paquito's instructions or operating manual. *See id.* at pp. 10-11, 33.

7. On March 14, 2020, codefendant Rivera did not have a copy of the Navigation Rules. *See id.* at p. 11.

8. At the time of the accident, there were an infrared system, GPS, compass, and navigation lights installed on M/V Marina & Paquito. *See id.* at p. 7-8.

9. At the time of the accident, Rivera did not have any experience operating M/V Marina & Paquito. *See id.* at p. 8.

10. At the time of the accident, Rivera had not seen in use the night vision (infrared) system in any other boat as passenger. *See id.* at p. 34-35.

11. On March 14, 2020, Rivera turned on the infrared system but did not guide himself by the instrument during the navigation. *See id.* at pp. 8-9.

12. Rivera never updated the GPS system of M/V Marina & Paquito as he alleges that the vessel was sold to him with the GPS updated. *See id.* at pp. 11-12.

---

[7] Also known as "Marina & Paquito."

13. The night before the accident, until 1:00 a.m. of March 14, 2020, Rivera was working at artist, Bad Bunny's birthday party. *See id.* at p. 39.

14. When Rivera arrived at the Marina on March 14, 2020, he was a little bit tired, but maybe a very mild hangover. He was anxious to use his boat for the first time so did not sleep a lot. *See id.* at p. 40.

15. On March 14, 2020, the day of the accident, was the first time that Rivera operated and/or navigated the M/V Marina & Paquito. *See id.* at p. 5.

16.  At the time of the accident, Rivera was the captain of M/V Marina & Paquito. *See id.*

17. During the voyage subject of this case, the M/V Marina & Paquito had a GPS device with two screens, radio, compass, infrared system, and navigation lights. *See id.* at p. 8.

18. On March 14, 2020, at approximately 3:00 p.m., Rivera and his guests departed from Marina Puerto del Rey to Icacos Island, Puerto Rico onboard the vessel M/V Marina & Paquito. *See id.* at p. 19.

19. After spending a couple of hours at Icacos, Rivera and the passengers traveled to Palomino Island. *See id*. at p. 32.

20. By 8:15 p.m. Rivera and the passengers proceeded to navigate back to Marina Puerto del Rey. Rivera was on command and at the helm of the M/V Marina & Paquito. *See id.* at p. 19.

21. The accident occurred on March 24, 2020 at around 8:45 p.m.

22. The illumination of the area at the time of the accident was very dark. *See id.* at p. 23.

23. As a result of the accident, Sánchez, Negrón and Carrion were expelled from the vessel into the water[8] but Castillo was not. *See id.* at p. 25.

24. After the accident, Rivera did not report the accident to the Department of Natural Resources nor to the United States Coast Guard. *See id.* at p. 26.

25. Defendants, Ugobono and Rivera sold the M/V Marina & Paquito on a date very close to the date of the accident. *See id.* at pp. 3-4.

26. Defendants-petitioners Ugobono and Rivera sold the M/V Marina & Paquito after the accident. *See id.*

27. Guardian issued Policy MAR14025, with a policy period from 02/28/2020 to 02/28/2021, to Rivera and Ugobono (the "Policy"). The Policy has the following coverages: Watercraft and equipment, Personal Effects, Watercraft liability, medical payments, and uninsured boaters. *See* Docket No. 103-5.

28. The Policy has a limit of $1,000,000.00 under the Watercraft Liability coverage. Said section states that, "[w]e will pay damages for bodily injury or property damage for which any Insured Person becomes liable through the ownership operation, maintenance, or use of the Insured Watercraft". *See id.* at p. 18.

29. Section D. "Watercraft Liability," of the Policy issued by Guardian provides that:

> We will pay damages for bodily injury or property damage for which any Insured Person becomes liable through the ownership, operation, maintenance, or use of the Insured Watercraft.
>
> In case of a collision with another vessel, we will pay any amount for which the insured becomes legally obligated to pay for bodily injury or property damages to other watercraft, up to the limits established in Section D. Provided, however,

---

[8] A finding as to whether the plaintiffs were expelled into rocks has been disputed and cannot be determined at this time.

> that in no event shall We be liable for salvage or wreck removal expenses of the other watercraft.
>
> We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our obligation to settle or defend ends when the amount we pay for damages equals our limit of liability for this coverage.

*See id.*

30. Section D, Third Party Liability Coverage of the Policy provides the following as to Guardian's limit of liability:

> The limit of liability shown for Watercraft Liability on the Coverage Section Page is our maximum limit of liability under this Section. This the most we will pay, regardless of the number of insured persons, claims made, or watercraft involved in any one accident, or series of accidents arising out of the same event including Property Damage, Bodily injury, Water Skiing, Coverage, Removal or Wreck and Pollution Liability.

*See id.*

31. The Private Yacht Policy Form 12/19 provides that:

> Section H -General Exclusion, Warranties and Conditions Which Apply to All Sections of this Policy:
>
> LIMITATION OF LIABILITY ACT.
>
> We will have the right to assert al defenses provided by the Limitation of Liability Act of 1851 (46 U.S.C. app. §183 (1984)] historically, or (46 U.S.C. § §30501-30512, as such defenses will insure to our benefit and limit our liability as well as that of the owner of the Insured Watercraft.

*See id.* at p. 25.

### III. STANDARD OF REVIEW MOTION FOR SUMMARY JUDGMENT (FED. R. CIV. P. 56)

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

8

R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *See Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013); *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (citing *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby, Inc.*, 477 U.S. at 255 (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–661 (1st Cir. 2000) (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248); *Prescott*, 538 F.3d at 40 (1st Cir. 2008) (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *Shalala*, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.*

9

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence.  *Maldonado–Denis v. Castillo Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994).  The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'"  *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990); *see also Suarez v. Pueblo Int'l.*, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists).  As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment."  *Liberty Lobby, Inc.*, 477 U.S. at 247–248.  Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation."  *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation."  *Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013)).  The Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge." *Reeves*, 530 U.S. at 150 (*quoting Anderson*, 477 U.S. at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis provided). *See* Fed. R. Civ. P. 56(a).

### III.   LEGAL ANALYSIS

*A.   Shipowner's Exoneration and/or Limitation of Liability*

The controversy before the Court arises from the *Shipowner's Limitation of Liability Act* ("the Act"), 46 U.S.C. § 181 *et seq.*, which "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). The Act serves "to limit the liability of vessel owners to their interest in the adventure ... and thus to encourage shipbuilding and to induce capitalists to invest money in this branch of industry." *British Transp. Comm'n v. United States*, 354 U.S. 129, 133 (1957) (citations omitted). Additionally, the Act "had the purpose of putting American shipping upon an equality with that of other maritime nations that had their own limitation acts." *Lewis*, 531 U.S. at 446-47 (*quoting The Main v. Williams*, 152 U.S. 122, 128 (1894)) (internal quotation marks omitted). For the purpose of exoneration and limitation of liability, "the term 'owner' includes a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 42 U.S.C § 30501.

"[T]he defense of limitation of liability for purposes of the Puerto Rico direct action statute, 26 L.P.R.A. § 201 *et seq.*, is a defense which is personal to the shipowner and is not

11

available to the vessel's insurer." *Torres v. Interstate Fire & Cas. No.*, 275 F.Supp. 784, 789 (D.P.R. 1967). Under Puerto Rico Law, the direct-action statute "provides a plaintiff with a substantive claim against an insurer separate and distinct from any claim which the plaintiff may have against the insured." *De Leon Lopez v. Corporación Insular de Seguros*, 931 F.2d 116, 122 (1st Cir. 1991); *see* P.R. Laws Ann. Tit. 26 § 2003); *see also Fraticelli v. St. Paul Fire & Marine Ins. Co.*, 375 F.2d 186 (1st Cir. 1967)(holding that the Puerto Rico direct action statute created a separate cause of action, hence, a person may bring suit directly against the insurer.) More significantly, a party is entitled to file a direct action against the insurer "even if the shipowner has filed a limitation of liability proceeding" pursuant to Puerto Rico law. *Ema v. Compagnie Generale Trasatlantique*, 353 F.Supp. 1286, 1290-91 (D.P.R. 1972).

In order to determine whether a shipowner is entitled to limitation or exoneration under *the Act* a two-step process is employed: "[f]irst, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). It is important to note that, "[k]nowledge or privity of any fact or act causing the accident is not enough for denial of limitation; it is only knowledge or privity of negligent acts or unseaworthy conditions which trigger a denial of limitation." *Id.*

Initially, the burden of establishing negligence is upon plaintiffs, however, once this requirement is met, the burden shifts to the shipowner to demonstrate lack of privity or knowledge. *Id.* "If the owner meets this burden, the court caps the owner's liability at the value

of the vessel and pending freight, resolves the claims, and apportions the fund." *In re Aramark Sports & Ent. Servs.*, LLC, 831 F.3d 1264, 1273 (10th Cir. 2016).

Privity or knowledge is usually defined as follows:

> As used in the statute, the meaning of the words "privity or knowledge," evidently, is a personal participation of the owner in some fault, or act of negligence, causing or contributing to the loss, or some personal knowledge or means of knowledge, of which he is bound to avail himself of a contemplated loss, or a condition of things likely to produce or contribute to the loss, without adopting appropriate means to prevent it. There must be some personal concurrence, or some fault or negligence on the part of the owner himself, or in which he personally participates, to constitute such privity, within the meaning of the Act, as will exclude him from the benefit of its provisions.

*Petition of M/V Sunshine, II*, 808 F.2d 762, 763–64 (11th Cir. 1987); *see Lord v. Goodall, Nelson & Perkins S.S. Co.,* 15 F.Cas. 8,506 (C.C.Cal.1877). "It is the owner's duty to use due and proper care to provide a competent master and crew and to see that the ship is seaworthy; any loss occurring by reason of fault or neglect in these particulars is within his privity." *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2d Cir. 1978). In fact, "[t]he burden to prove seaworthiness and the exercise of due diligence to make the ship seaworthy is upon the vessel owner or operator." *Id.*

Therefore, in order to deny limitation to an owner, "[t]he privity or knowledge must be actual and not merely constructive. It involves a personal participation of the owner in some fault or act or negligence causing or contributing to the injury suffered. There must be some fault or negligence on his part or in which he in some way participates." *Petition of Bloomfield S.S. Co.*, 422 F.2d 728, 736 (2d Cir. 1970).

Having reviewed the request for summary judgment and the opposition thereto, the Court finds that many of the proposed facts are on dispute. For instance, the circumstances of

the accident, the unseaworthiness of the vessel, whether Rivera was intoxicated or not, among others. The Court in considering summary judgment motion may not weigh evidence, as summary judgment admits no room for credibility determinations and no room for measured weighing of conflicting evidence such as trial process entails, and if facts permit more than one reasonable inference, courts on summary judgment may not adopt inference least favorable to nonmoving party. *See Rayzor v. United States*, 937 F. Supp. 115 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997). As such, the Court is prevented from entertaining matters as to credibility at this stage of the proceedings.

***B.        Guardian's Limitation of Liability pursuant to Shipowners' Limitation of Liability Act***

Plaintiffs allege that "the terms of the insurance contract are clear and prevents said co-defendant to benefit from the Shipowner's Limitation of Liability Act." Docket No. 103 at p. 14. Whereas, the defendants claim that Policy MAR14025 which was effective between 02/28/2020 and 02/28/2021 with a limit of up to $1,000,000.00 under the Watercraft Liability coverage (*Fact. Find.* ¶ 28) provides that,

> LIMITATION OF LIABILITY ACT.
>
> We will have the right to assert all defenses provided by the Limitation of Liability Act of 1851 (46 U.S.C. app. §183 (1984)] historically, or (46 U.S.C. § §30501-30512), as such defenses will insure to our benefit and limit our liability as well as that of the owner of the Insured Watercraft.

*See Fact. Find.* ¶ 31.

Generally, questions regarding the interpretation of maritime insurance policies are governed by state law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310; 75 S.Ct. 368; 99 L.Ed. 337 (1955). Accordingly, the Puerto Rico Civil Code firmly provides that "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the

literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31 § 3471. In instances wherein "[t]he interpretation of obscure stipulations of a contract must not favor the party occasioning the obscurity." P.R. Laws Ann. tit. 31 § 3478. Therefore, "where a policy's language is unclear, we must construe the provisions against the insurer." *Lopez & Medina Corp. v. Marsh USA, Inc.*, 667 F.3d 58, 64 (1st Cir. 2012).

Upon a careful review of the provisions included in Policy MAR14025, the Court finds that the terms that were utilized by the insurance company when preparing the policy make the insurer eligible to benefit from any limitation afforded to the owner of the vessel. There is a specific mention on the policy that Guardian is entitled to limit its liability when the insured has been afforded a limitation to its liability pursuant to the *Shipowner's Limitation of Liability Act*. As such, Guardian shall not be ordered to pay an indemnity over the amount that Ugobono or Rivera may be ordered to pay. Guardian's liability is contractually limited to the liability of the owner pursuant to the *Shipowner's Limitation of Liability Act* should they be held liable for the damages suffered by the Claimants.

### V.     CONCLUSION

From an analysis of the motions submitted and the arguments included therein, it is evident to the Court that several material facts regarding the accident that are still in controversy. Said matters will proceed to trial. The trier of fact will weigh the evidence and make the appropriate determination.

For the aforementioned reasons, the Court hereby **DENIES** plaintiffs' *Motion for Partial Summary Judgment and Memorandum of Law* (Docket No. 103). The Court encourages the parties to evaluate whether reaching a settlement that avoids the costs associated with going

to trial is appropriate at this juncture. Should the parties be willing to engage in settlement negotiations, the Court suggests that this matter be referred for mediation before proceeding to trial. As such, the parties are to jointly propose a potential mediator, by no later than February 10th, 2023.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of January, 2023.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge